## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

RICHARD D. MCKEAN,
JEANIE C. MCKEAN,

      Plaintiffs,

v.                              No. 09-CV-1129 WJ/LAM

SALLY HERNANDEZ, CONNIE MARTINEZ,
CASSANDRA SENA, SAM HERBERT, LEWIS
TERR, KEN ORTIZ, and JOHN and JANE DOE
1 thru 6,

      Defendants.

### MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION
### TO DISMISS AND MOTION TO STRIKE SECOND AMENDED COMPLAINT

      THIS MATTER is before the Court on *Defendants Sally Hernandez, Cassandra Sena, Sam*

*Herbert, Lewis Terr, and Ken Ortiz' Motion to Dismiss Plaintiff's Amended Civil Complaint* (Doc.

17), filed April 20, 2010, and *Defendants Sally Hernandez, Cassandra Sena, Sam Herbert, Lewis*

*Terr, and Ken Ortiz' Motion to Strike Plaintiff's Second Amended Civil Complaint* (Doc. 30), filed

July 13, 2010.  The Court has reviewed the motions and briefs submitted by the parties, and the

relevant authorities.  The Court concludes that the motion to dismiss will be denied in part and

granted in part.  It will be denied with regard to Plaintiff's First-Amendment freedom-of-speech

claim.  It will be granted on all other claims.  The motion to strike will be granted.

### FACTUAL BACKGROUND

      Plaintiff Richard McKean[1] owns a small used car dealership in Carlsbad, New Mexico.  *See*

_____

      [1]The singular term Plaintiff is used to indicate Plaintiff Richard D. McKean.  Any
reference to Jeanie C. McKean will spell out her name in full.  The plural term Plaintiffs is used

Doc. 7 ¶ 2, at 1.  His dealer license is issued by the State of New Mexico Taxation and Revenue Department-Motor Vehicle Division (MVD).  *See id.* ¶ 46, at 7.  After he received his dealers license, and after he had met all of the requirements of the MVD, the MVD issued "Richard McKean dba Rick's Special Interest" a VIN Inspector Certification.  *See id.* ¶¶ 20-21, at 4-5, ¶ 34, at 6; ¶ 46, at 7.  MVD knew that Richard McKean was the owner of Rick's Special Interest.  *See id.* ¶ 22, at 5.

On September 10, 2007, without warning to Plaintiff or giving him an opportunity to be heard, Defendant Sally Hernandez canceled the "procedures to obtain titles by ACO (Affidavit Certifying Ownership)."  *Id.* ¶¶ 5-6, at 3.  Defendant Hernandez refused to title for Plaintiff any more vehicles by the "ACO policy that had been in force for eleven years."  *Id.* ¶ 69, at 10.  As a result of her refusal to title his vehicles, Plaintiff was forced "to cancel business deals with his customers," and refund their money.  *Id.* ¶ 7-8, at 3.

On October 3, 2007, the MVD cancelled Plaintiff's VIN Inspection Certification. Defendant Sam Herbert hand-delivered to Plaintiff a "Notice of Cancellation of Vin Inspectors Vin Certification."  Doc. 7 ¶ 39, at 7; ¶ 14, at 4.  "Connie Martinez, Chief Bureau of the Dealers Section" signed the notice of cancellation.  *Id.* ¶ 16, at 4.  When Plaintiff requested from Defendant Herbert an explanation of why his certification was cancelled, Defendant Herbert "responded, the plaintiff was in violation of the Affidavit of Vin form which reads 'I certify . . . that I have conducted a visual inspection and that I am not involved in or responsible for any other activities or transactions connected with it.'"  Doc. 7 ¶ 17-18, at 4.  The MVD's "allegations were [that Plaintiff] made a false

---

to indicate both Richard D. McKean and Jeanie C. McKean.  At most times, the Amended Complaint states that Plaintiff is only Richard D. McKean.  The first line of the Amended Complaint, in fact, states "comes now Richard D. McKean as Plaintiff."  Doc. 7 at 1.

statement by signing the Vin Inspection form for Rick's Special Interest Dealership when he actually was 'involved in or responsible for other activities or transactions connected with it.'" Doc. 7 ¶ 40, at 7.

Plaintiff Jeanie C. McKean is a VIN inspector and inspects vehicles in "their dealership's name." *Id.* ¶ 57, at 8. Plaintiff Richard McKean states that "[a]s wife of Plaintiff, [Plaintiff Jeanie C. McKean] is a partner in the business." *Id.* ¶ 59, at 8-9.

In order to be certified as a VIN inspector, Plaintiff was required to complete a VIN Inspection Class. Doc. 7 ¶ 23, at 5. The students in that class included dealers and salvage yard owners. *See id.* In the class, the instructors explained "that the meaning of the statement that the inspectors had to sign was that they could not put the vehicles in their personal names." *Id.* ¶ 24, at 5. The instructors also taught that "the business name was a different entity than the persons name[d] as an inspector" and "they were only allowed to inspect vehicles for the business they worked for." *Id.* ¶¶ 25-26, at 5.

On October 22, 2007, Plaintiff requested from Ken Ortiz, the Director of the Motor Vehicle Division, an administrative hearing regarding the cancellation of his VIN Inspection Certification. *See id.* ¶ 27, at 5; ¶¶ 60-61, at 9. Defendant Ortiz did not respond to the request. *See id.* ¶ 61, at 9.

Defendants Martinez, Herbert, Sena and Ortiz "were involved in canceling his certification for falsifying the VIN Inspection Form." *Id.* ¶ 36, at 6. They told the other MVD departments about the cancellation of his certification. *See id.* ¶ 42, at 7. Plaintiff asserts that the charges against him are false. *See id.* ¶ 45, at 7. Because they heard of this cancellation, Plaintiff's customers are afraid to do business with him. *See id.* ¶ 43, at 7.

"Once the Plaintiff sent a request for hearing to" Defendant Ortiz, "the information was

3

passed along the channels." *Id.* ¶ 92, at 17.[2]  Defendant Sena sent Defendant Herbert to inspect Plaintiff's business and he found numerous violations. *See id.* ¶¶ 93-97, at 17.  Plaintiff contested the violations in an administrative hearing. *See id.* ¶ 98, at 17.  Plaintiff had received notice that his dealership license was being revoked and contested it; an administrative hearing was held on the issue. *See id.* ¶ 101, at 17.  In relation to that revocation, Plaintiff conducted and Defendant Terr "sat in on" the depositions of Defendant Hernandez, Defendant Martinez and Toby Williams, who was an instructor for the VIN Inspection class. *See id.* ¶ 99, at 17; ¶ 47, at 8.  All three of these individuals stated in their depositions that Plaintiff could only inspect vehicles acquired by his dealership. *See id.* ¶ 48, at 8.  At the hearing, Defendant Terr deposed Defendant Sena, who stated that an inspector "can inspect any vehicles as long as he does not inspect those of his own dealership." *Id.* ¶¶ 101-103, at 17.

Defendant Hernandez refused to title several of Plaintiff's vehicles.  On November 26, 2007, Defendant Hernandez refused to title a 1956 Packard. *See id.* ¶ 90, at 13.  On April 25, 2008, Defendant Hernandez refused to issue a bonded title for the same 1956 Packard and asked Plaintiff to perform a "50 State Record Check." *See id.* ¶¶ 92-93, at 14.

On March 10, 2008, Plaintiff requested two vehicle-identification-number verifications from Defendant Sena. *See id.* ¶ 106, at 15.  Both were returned to Plaintiff "with [a] note in red invalid vin and the box checked - visually check and resubmit." *Id.* ¶ 108, at 15.  Plaintiff confirmed the written numbers were correct and resubmitted them. *See id.* ¶ 109, at 15-16.  The American Cars 1946-1975 Catalog indicated that the submitted numbers contained the correct number placement. *See id.*  On June 23, 2008, Plaintiff received back from Defendant Sena the forms containing the

---

[2]Plaintiffs' Amended Complaint contains two sets of ¶¶ 82-104 that contain different facts and allegations.  The second set of numbers starts on page 16 of the Amended Complaint.

same message as previously received. *See id.* ¶ 111, at 16.  Plaintiff asserts that Defendant Sena "has a duty to check the record" and "did not verify the numbers being consist[e]nt" with the book. *Id.* ¶¶ 82-84, at 16.

On July 23, 2008, Defendant Hernandez refused to title a 1957 Chevrolet stating that the vehicle "must be running, driving and insured." *Id.* ¶ 99-101, at 15.  Defendant Hernandez told Plaintiff Richard McKean that Defendant Terr "has given her permission to deny plaintiffs [sic] title work." *Id.* ¶ 102, at 15.

On July 21, 2008, Plaintiff requested "an administrative hearing for refusal to title the 1956 Packard." *Id.* ¶ 95, at 14.  Specifically, Plaintiff requested an administrative hearing "concerning the disservice from Motor Vehicle employees, Sally Hernandez and Cassandra Sena." *Id.* ¶ 85, at 16.  Plaintiff did not receive a response to his request. *See id.* ¶ 96, at 14.

The wrongful acts of Defendant have caused hardship on the Plaintiffs and has affected their marital relationship, including causing a lack of consortium. *See id.* ¶¶ 65-66a, at 9-10.

On November 20, 2008, Plaintiff filed a Notice of Intent to File Tort Claim. *See id.* ¶ 87, at 16.

## PROCEDURAL BACKGROUND

On November 30, 2009, Plaintiffs filed their original Complaint (Doc. 1).  Plaintiffs filed their "Amended Civil Comlaint [sic]" (Doc. 7) on April 6, 2010.

On April 20, 2010, Defendants Hernandez, Sena, Herbert, Terr and Ortiz filed their motion to dismiss the Amended Complaint asserting that the complaint fails to state a claim upon which relief can be granted.

On June 30, 2010, without obtaining prior leave of court or agreement of opposing counsel, Plaintiffs filed a "2nd Amended Civil Comlaint [sic]" (Doc. 28).  Neither Plaintiff signed the Second

Amended Complaint before it was filed with the Court.  *See* Doc. 28 at 27.  On July 13, 2010, Defendants Hernandez, Sena, Herbert, Terr and Ortiz filed their motion to strike the Second Amended Complaint asserting that it should be "stricken for failure to seek leave from the Court to file same" in accordance with FED. R. CIV. P. 15(a).  Doc. 30 at 1-2.  They also assert that the Second Amended Complaint would nevertheless not survive the pending motion to dismiss.  *See* Doc. 30 ¶ 7, at 2.

**DISCUSSION**[3]

**I.      Pleading Rules and Procedures**

In their motion to strike, Defendants assert that Plaintiffs' Second Amended Complaint should be struck because "Plaintiffs neither sought permission from counsel for Defendants to file, nor did they seek leave of Court."  Doc. 30 ¶ 5 at 2.  Defendants also argue that the Second Amended Complaint cannot survive the motion to dismiss.  *See* Doc. 30 at 2.  Rule 15(a)(1) of the Federal Rules of Civil Procedure allows a plaintiff to amend its pleading once as a matter of course under certain conditions.  Additional amendments are permitted only upon the opposing party's written consent or with leave of court.  *See* FED. R. CIV. P. 15(a)(2).  Plaintiffs filed their original Complaint on November 30, 2009.  They then filed their "Amended Civil Comlaint [sic]" on April 6, 2010 (Doc. 7).  Plaintiffs are now attempting to again modify their original Complaint and have, without consent of the opposing party and without leave of Court, filed a "2nd Amended Civil Comlaint [sic]." (Doc. 28).  Plaintiffs have not followed the proper procedure for amending a Complaint.

---

[3]In the style of the Amended Complaint, Plaintiffs list as Defendants John & Jane Doe 1-6.  There are no references to these unknown individuals in the Complaint.  There are no facts presented to indicate there were other actors in the mentioned events.  John & Jane Doe 1-6 will therefore be dismissed as Defendants from this matter.

6

Plaintiffs have also not complied with the Federal Rules of Civil Procedure in filing their 2nd Amended Complaint in that neither of the Plaintiffs have signed the pleading. Although a court must liberally construe pro se pleadings, pro se status does not excuse a litigant from his or her obligation to comply with the fundamental requirements of the Federal Rules of Civil Procedure. *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994). Pursuant to Federal Rule of Civil Procedure 11(a)

> [E]very pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number. . . The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.

The Court called Plaintiffs and left a message on their answering machine regarding the unsigned pleading and provided a return phone number. Plaintiffs did not return a call to the Court or file a signed pleading. The rule does not provide the Court discretion in making its decision; the Court will strike the Second Amended Complaint.[4]

The Plaintiffs have also not complied with other Court procedural requirements. More than half way through Plaintiff's response to the motion to dismiss, Plaintiffs first request that the Court allow them to again amend their complaint. *See* Doc. 23, lines 132-134, at 11. A request by a plaintiff to amend his or her complaint must be made by a separate motion. *See* D.N.M. Administrative Order No. 92-88 (requiring the parties to "submit a separate pleading for each matter upon which adjudication or a ruling of the Court is sought."). The motion to amend is required to meet the particularity requirements of Federal Rule of Civil Procedure 7(b) and the requirement of

---

[4]In their response to the motion to dismiss, Plaintiffs ask the Court to hold the motion "in abeyance till the time the amended complaint is filed or in the alternative deny the Motion to Dismiss in its entirety." Doc. 23 at 12-13. Plaintiff's Second Amended Complaint is struck. The requests are denied.

the local rules that the proposed amended pleading be attached to the filed motion to amend.  *See*
D.N.M.LR-Civ. 15.1.  There was no separate motion to amend filed by Plaintiffs.  Despite these
errors by the Plaintiffs, the Court nevertheless gave consideration to the proposed pleading in
making its determination.

## II.    Motion to Dismiss

A complaint should be dismissed for failure to state a claim under FED. R. CIV. P. 12(b)(6)

> if, viewing the well-pleaded factual allegations in the complaint as true and in the
> light most favorable to the non-moving party, the complaint does not contain
> 'enough facts to state a claim to relief that is plausible on its face.' " *Macarthur v.*
> *San Juan County*, 497 F.3d 1057, [1065,] 2007 WL 2045456, at *5, 2007 U.S.App.
> LEXIS 17008, at *16 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550
> U.S. 544, 127 S. Ct. 1955, 1968-69, 167 L. Ed. 2d 929 (2007)).

*Anderson v. Suiters*, 499 F.3d 1228, 1232 (10th Cir. 2007).  A claim is plausible on its face "when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937,

1949 (2009).

> "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence
> that the parties might present at trial, but to assess whether the plaintiff's complaint
> alone is legally sufficient to state a claim for which relief may be granted" under
> Rule 8(a)(2).   *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)
> (quotation marks and citation omitted), *cert. denied* --- U.S. --- , 130 S. Ct. 142, ---
> L. Ed. 2d. --- (2010).  While, generally, only the complaint and its allegations are
> considered in a motion to dismiss, documents referred to in the complaint may be
> considered at the motion-to-dismiss stage if they are "central to the plaintiff's claim"
> and their authenticity is undisputed *Alvarado* [*v. KOB-TV, L.L.C.*, 493 F.3d 1210,]
> 1215 [(10th Cir. 2007)].

*Phillips v. Bell*, 365 F. App'x 133, 137-38 (10th Cir. 2010).

## III.    Violation of Constitutional Rights

### A.  First Amendment

Plaintiff contends that Defendants violated his right to freedom of speech under the First

Amendment of the United States Constitution by canceling his VIN inspector certification in retaliation for expressing his views in a letter to Defendant Hernandez. *See* Doc. 7 ¶ 11, at 3.

In order to state a First-Amendment claim for retaliation, a plaintiff must allege 1) that he engaged in activity protected by the First Amendment; 2) that the actions directed at the plaintiff by the defendant caused the plaintiff to suffer an injury that would chill a person of ordinary resistance from continuing to engage in that activity; and 3) that the defendant's actions were motivated by the protected activity. *See Shero v. City of Grove, Oklahoma*, 510 F.3d 1196, 1203 (10th Cir. 2007). Accordingly, in order to state a claim for First-Amendment retaliation, a plaintiff must allege that he engaged in activity protected by the First Amendment and that he suffered adverse actions motivated by such activity.

In their motion to dismiss, Defendants argue that Plaintiff's "claims for violation of the First Amendment must be dismissed as a matter of law." Doc. 17 at 10. Defendants argue that "the United States Supreme Court expressly held that a plaintiff must plead and prove an absence of probable cause as part of his or her prima facie [First Amendment] case" and that Plaintiff has not asserted "any facts of any communication to either Ken Ortiz or Sam Herbert prior to the cancellation much less that termination of the agreement was the result of retaliation." *Id.* at 10.

Recognizing a Circuit split as to whether probable cause must be proven in a First-Amendment retaliation-prosecution case, the Supreme Court, *in Hartman v. Moore*, 547 U.S. 250, 265-66 (2006), found that "showing an absence of probable cause will have high probative force, and can be made mandatory with little or no added cost, it [therefore] makes sense to require such a showing as an element of a plaintiff's case, and we hold that it must be pleaded and proven." Plaintiff alleges that Defendant Ortiz, Martinez and Herbert wrongfully cancelled "his vin inspection certification as a retaliation for expressing his views against the authority of the Division to cancel

9

policy without due process."  Doc. 7 ¶ 31, at 5.  Plaintiff attached as Exhibit B (Doc. 7-3) to his Amended Complaint (Doc. 7) his September 10, 2007 letter to Defendant Hernandez, with copy sent to Defendant Ortiz, asking for a reconsideration of the change in titling procedures, noting that he had not received any prior notice of the change and setting forth his potential injury as a result of the change.  This letter was sent to Defendants Hernandez and Ortiz prior to the cancellation of Plaintiff's VIN Inspector Certification on October 3, 2007.  Plaintiff contends that this written communication caused the termination of his VIN inspection certification.  Viewing the facts "in the light most favorable to the non-moving party,"[5] Defendants have not sufficiently addressed Plaintiffs' First-Amendment claim of retaliation.  Accordingly, the Motion to Dismiss is denied as to this claim.

### B.    Due Process and Fourteenth Amendment

The Fourteen Amendment of the U.S. Constitution protects citizens from the deprivation of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV, § 1.  Plaintiff contends that Defendants violated his due-process rights under the Fourteenth Amendment to the Constitution and 28 U.S.C. § 1983.  Defendants allege that Plaintiff's due-process rights were not violated because "Plaintiff Richard McKean cannot establish a constitutional property or liberty interest in his contract with the Motor Vehicle Division as a VIN Inspector." Doc. 17 at 5.

In order to prevail on a procedural-due-process claim, "a plaintiff must demonstrate: (1) the deprivation of a liberty or a property interest and (2) that no due process of law was afforded." *Stears v. Sheridan Cnty. Mem'l Hosp. Bd. of Trustees*, 491 F.3d 1160, 1162 (10th Cir. 2007) (citing *Henningh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998)).  A due-process claim may only

---

[5]*Anderson*, 499 F.3d at 1232

proceed where the state has interfered with a plaintiff's constitutionally cognizable liberty or property interest. *See Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006).

The Plaintiff asserts two procedural-due-process claims. The first claim is that he was not afforded sufficient due process prior to the termination of his VIN inspector contract with the MVD. *See* Doc. 7 ¶¶ 29-31 at 5. Paragraph 12 of the Agreement for Appointment of Vehicle Identification Number (VIN) Inspector between the Director of the Motor Vehicle Division and Plaintiff states: "The Division may terminate this agreement and/or appointment of the Authorized Inspector at any time, without prior notice or explanation." Doc. 7, Exhibit O (Doc. 7-16), at 3. "At any time, without prior notice or explanation" means without cause. There is no cause requirement in the contract nor any right to a hearing. The administrative code also sets forth this same policy. *See* N.M. Code R. § 18.19.3.10 D (4/7/89, as amended through 9/14/00). (Doc. 7-8 Exhibit G at 1) ("The director may terminate the appointment of any individual as an authorized inspector at any time, without prior notice or explanation.").

Defendants cite to *Boydston v. N.M. Taxation & Revenue Dep't, et al.*, 1997 WL 608798 (10th Cir. October 3, 1997) (unpublished opinion) in support of their argument that there is no protected property interest in one's continued employment as a VIN Inspector. *See* Doc. 17 at 6. Similar to here, in *Boydston*, the Court looked at the contract to make its determination that *Boydston* had no property interest in his contractual employment relationship with the defendants. *See id.* at *2. The contract stated "[t]he Division may terminate without notice." *Id.*

Without a property or liberty interest, there is no a due-process requirement. Because Plaintiff did not have a property interest in his continued contractual relationship as a VIN Inspector for the Motor Vehicle Division, he was not denied due process when the contract was terminated. Defendants' motion to dismiss the first due-process claim will be granted.

11

Plaintiff's second procedural-due-process claim is that he was not afforded due process prior to the cancellation of ACO policy.  *See* Doc. 7 ¶ 56 at 3.  Defendants assert "Plaintiff fails to state a claim that due process would be required under such circumstances."  Doc. 17 at 9.[6]  Plaintiff contends that Defendant Hernandez "refused to process titles by ACO procedure without giving proper notice of policy changes."  Doc. 23, line 22-23 at 2.[7]

As stated above, the two requirements of procedural due process are a deprivation of a liberty or a property interest and no due process being afforded.  *See Stears*, 491 F.3d at 1162.  "Some form of hearing is required before an individual is finally deprived of a property interest."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557-558 (1974)). "[T]o determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570-71 (1972).  "To have a [liberty] interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Montero v. Meyer*, 13 F.3d 1444, 1447 (10th Cir. 1994) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).  Plaintiff fails to demonstrate how the change in policy without notice resulted in a deprivation of a protected property or liberty interest.  Plaintiff has failed to show a legitimate entitlement to the continuation

---

[6]Defendants also argue "there is no evidence that Plaintiff sought review of these apparent final actions" changing the policy.  Doc. 17 at 9.  The Court need not analyze this alternative argument as no due process was required for the change in policy.

[7]Plaintiff states he requested a hearing, but, he, in fact, has not.  His September 10, 2007 letter to Defendant Hernandez, copied to Defendant Ortiz, asks that the procedural change be reconsidered and that he would like an answer within thirty days.  *See* Doc. 7, Exhibit B (Doc. 7-3).  In the letter, Plaintiff did not request a hearing.  In comparison, Plaintiff's October 22, 2007 letter to Defendant Ortiz regarding the cancellation of his certification specifically requests an administrative hearing.  *See* Doc. 7, Exhibit F (Doc. 7-7).

of the ACO policy.  Plaintiff was a VIN inspector through a contract which did not grant him a property or liberty interest in the continuation of the contract.  Nevertheless, despite the change in policy, the contract continued.  The change in policy did not affect the existence of his contract, much less a property or liberty interest.  Plaintiff has not indicated he was ever guaranteed that the ACO would remain in place.  Further, as Defendant noted, Plaintiff has not shown that due process would be required under the circumstances.  Plaintiff complains that the change would affect his business; however, the affect on his business is not any different from the effect of the change on any other similar business.

> Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption.  The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard.

*Bi-Metallic Inv. Co. v. Bd. of Equalization*, 239 U.S. 441, 445 (1915) "There must be a limit to individual argument in such matters if government is to go on." *Id.*  Plaintiff having failed to establish any liberty or property interest in his continuation as a VIN Inspector or in the continuation of the ACO policy, there was no due process requirement and thus, no due process violation.

## IV.    Contractual Claims

In Plaintiff's proposed Second Amended Complaint, Plaintiff acknowledges the wording of the termination provisions of the VIN inspector agreement, then argues that the contract was an adhesion contract, unconscionable, and a cognovits contract.  *See* Doc. 28 ¶¶ 50-64 at 9-10.

In support of his adhesion-contract argument, Plaintiff contends that the standardized form does not afford him the right to request a hearing to discuss the reasoning his inspection certification was canceled.  *Id.* ¶ 53 at 9.  He also asserts that "the party proffering the standardized contract

[enjoyed] a superior bargaining position because [he, as] the weaker party[,] virtually cannot avoid doing business under the particular contract terms." and "the contract [was] offered to [him, as] the weaker party[,] on a take-it-or-leave it basis, without opportunity for bargaining." *Id.* ¶¶ 51-52 at 9.

"Procedural unconscionability is determined 'by examining the circumstances surrounding the contract formation, including the particular party's ability to understand the terms of the contact and the relative bargaining power of the parties.'" *Society of Lloyd's v. Reinhart*, 402 F.3d 982, 996 (10th Cir. 2005) (quoting *Guthmann v. LaVida Llena*, 103 N.M. 506, 510, 709 P.2d 675, 679 (1985)). "'Factors to be considered include the use of sharp practices or high pressure tactics and the relative education, sophistication or wealth of the parties, as well as the relative scarcity of the subject matter of the contract.'" *Id.*

"'Substantive unconscionability is concerned with contract terms that are illegal, contrary to public policy, or grossly unfair.'" *Id.* at 997 (10th Cir. 2005) (quoting *Guthmann*, 103 N.M. at 511, 709 P.2d at 679). "When terms are unreasonably favorable to one party a contract may be held to be substantively unconscionable." *Id.* "'The terms are to be considered in the light of the general commercial background and the commercial needs of the particular trade or case.'" *Id.*

Plaintiff asserts that the VIN Inspection affidavit is "confessing judgment against himself" and is, therefore, a cognovits contract. Doc. 28 ¶ 63, at 10. The idea of a cognovit is an "ancient legal device 'signed by a defendant in an action actually commenced confessing the plaintiff's demand to be just, and empowering the plaintiff to sign judgment against him in default of his paying the plaintiff the sum due to him within the time mentioned in the cognovit.'" *Society of Lloyd's*, 402 F.3d at 997 (quoting Black's Law Dictionary (8th ed. 2004)). "A cognovit clause is not, per se, violative of Fourth Amendment due process." *D. H. Overmyer Co. Inc., of Ohio v. Frick Co.*,

14

405 U.S. 174, 187 (1972).  As Plaintiff acknowledges, New Mexico enforces cognovits where the party has "voluntarily, knowingly and intelligently" waived his or her rights.  Doc. 28 ¶ 63 at 28 (citing *Society of Lloyd's*, 402 F.3d at 998).

All of Plaintiff's contractual arguments, as set forth in the Second Amended Complaint, fail. Plaintiff has not argued that the meaning of the terms of the contract is unclear; he argues that the provision was unfairly imposed upon him.  Plaintiff has not alleged that he was rushed into signing this agreement or deprived of an opportunity to fully examine the terms of the contract prior to the signing.  He does not argue that he was unable to understand the provisions of the contract or was prevented from having an attorney advise him with regard to the contract or that he tried to negotiate or change any of the terms and was prevented from doing so.  And, he does not contend that being a VIN inspector was a requirement to be a dealership owner and that he was forced into signing the contract.  In fact, he states the opposite.  *See* Doc. 7 ¶ 46 at 7.  Plaintiff cannot now in hindsight argue unequal bargaining power or that the contract was grossly unfair without presenting any facts to demonstrate such a situation was true at the time of the contract's signing.  The wording of the contract and the rights and obligations of the parties thereto is clear.  No pressure tactics were used to make Plaintiff sign the agreement.  All facts that were presented indicate that Plaintiff voluntarily, knowingly, and intelligently waived his rights to a hearing when he signed the contract.[8]  There is

---

[8]The decision regarding cognovits contracts was decided solely on the willingness of Plaintiff to enter into the contract.  No analysis was performed as to whether the contract would, in fact, be considered a cognovits contract.  Plaintiff further asserts in the Second Amended Complaint that "if the entity of Ricks Special Interest is the same as Richard D. McKean, then the appointment of Richard D. McKean as a vin inspector for his dealership becomes and illusory appointment" and violates "New Mexico's Public Policy."  Doc. 28 ¶¶ 34-35, at 7.  In support of this assertion, Plaintiff cites to a 1939 decision of the Chancery Court of New Jersey. The Court has found and Plaintiff has cited no New Mexico case supporting this argument.  The claim accordingly fails.

no evidence that this contract was not freely and willingly entered into by either party.  The contractual arguments as presented in the filed Second Amended Complaint fail.

## V.     Stigma Plus

"Plaintiff alleges that defendants Connie Martinez, Sam Herbert, Cassandra Sena, and Ken Ortiz committed a wrongful act against the plaintiff for canceling his Vin Inspection Certification and damaging his reputation under the Stigma-Plus Claim."  *Id*. ¶ 62, at 9.  Plaintiff asserts that because the individual Defendants "notified the other MVD departments of the cancellation of his certifications." his customers are afraid to do business with him.  *Id.* ¶¶ 42-44 at 7.  "'Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, a protectible liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his name.'"  *Gwinn v Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004) (quoting *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1558 (10th Cir. 1993)) (internal quotation marks omitted)).  More than damage to one's reputation alone is required to implicate due process protections, however.  *See id.; see also Paul v. Davis*, 424 U.S. 693, 701 (1976) (stating that "reputation alone, apart from some more tangible interests such as employment, is neither 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause"); *McGhee v. Draper*, 639 F.2d 639, 643 (10th Cir. 1981) ("stigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a § 1983 cause of action.").  To succeed on an allegation that the government impugned a plaintiff's "good name, reputation, honor, or integrity," under the "stigma plus" standard, Plaintiff must demonstrate that: "(1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that 'significantly altered [his or] her

16

status as a matter of state law.'" *Kennedy v. Smith*, 259 F. App'x 150, 155 (10th Cir. 2007) (quoting *Paul*, 424 U.S. at 710-11).

Plaintiff contends that the individual defendants told other MVD departments that his certification was cancelled.  Doc. 7 ¶ 42 at 7.  Plaintiffs' lawsuit focuses around Plaintiff's opposition to his certification being cancelled.  The fact that his certification was cancelled is not contested.  The statement by the MVD employees that the certification was cancelled is true and is not capable of being proved false.  It is not unreasonable, and is in fact logical, from a business standpoint, for one office of the MVD to tell another office of the MVD that an inspector's certification has been cancelled.  The stigma-plus claim will be dismissed.

**VI.     New Mexico Torts Claim Act**

Plaintiffs allege the following state-tort causes of action against Defendants: loss of consortium, negligence, negligence per se, and civil conspiracy.  *See* Doc. 7, Counts IV-VIII and X, at 9-15 and 16-18.  Plaintiffs also assert against Defendants a vague state-tort claim of defamation.  *See* Doc. 7 at 18.

In their motion to dismiss, Defendants contend that claims arising from conduct which occurred on September 10, 2007, October 23, 2007 and November 26, 2007 are barred by the statute of limitations for torts, which is two years.  *See* Doc. 17 at 4.  Plaintiffs, in response, assert that they have two years from the Notice of Tort to file their claim and therefore their claims are not barred by the statute of limitations.  Doc. 23 ¶¶ 31-39, at 3.

The New Mexico Tort Claims Act (NMTCA) states:

Actions against a governmental entity or a public employee for torts shall be forever barred, *unless such action is commenced within two years after the date of occurrence resulting in* loss, injury or death, except that a minor under the full age of seven years shall have until his ninth birthday in which to file.

N.M. STAT. ANN § 41-4-15 (1978) (emphasis added). "The purpose of a statute of limitations is to protect prospective defendants from the burden of defending against stale claims while providing an adequate period of time for a person of ordinary diligence to pursue lawful claims." *Garcia v. La Farge*, 119 N.M. 532, 537, 893 P.2d 428, 433 (1995)(citing *Roberts v. Sw. Cmty. Health Servs.*, 114 N.M. 248, 256, 837 P.2d 442, 450 (1992)). Plaintiff asserts that he filed his Notice of Intent to File Tort Claim on November 20, 2008, Doc. 7, ¶ 87 at 16 and, therefore, none of his claims are barred by the statute of limitations. The filing of a complaint in the court is the act which commences a lawsuit, not the filing of a notice of intent to sue. Plaintiffs' original Complaint was filed on November 30, 2009. Accordingly, Plaintiffs' tort claims arising from conduct which occurred more than two years prior to that date are barred by the statute of limitations.

Alternatively, Defendants assert that, notwithstanding the statute of limitations, the state-tort claims against them are barred by the NMTCA. *See* Doc. 17 at 4-5. The NMTCA, *see* N.M. STAT. ANN § 41-4-1, et seq. (1978), grants public employees immunity from damages in tort actions except insofar as immunity is waived by the NMTCA itself. The NMTCA is the "exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Torts Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim." N.M. STAT. ANN § 41-4-17(A) (1978). Under the NMTCA, the Court must first determine whether immunity has been waived for the claims against the governmental entities and public employees acting within the scope of their employment. Consent to be sued under the NMTCA must be specifically found within one of the exceptions under the Act. *See Redding v. City of Truth or Consequences*, 102 N.M. 226, 227, 693 P.2d 594, 596 (Ct. App. 1984). "Consent to be sued may not be implied." *Begay v. State*, 104 N.M.

483, 487, 723 P.2d 252, 256 (Ct. App. 1985), *rev'd on other grounds by Smialek v. Begay*, 104 N.M. 375, 721 P.2d 1306 (1986). Because a plaintiff's right to recover is limited to the "rights, procedures, limitations and conditions prescribed" in the Act, if the specific tort is not found in the exceptions to the NMTCA, or if immunity has not been waived, the cause of action may not proceed. *Methola v. Eddy County*, 95 N.M. 329, 332-334, 622 P.2d 234, 237-239 (1980).

Plaintiffs assert that the Defendants at all times were acting under the color of state law. Doc. 7 ¶ 4 at 2. Plaintiff has not alleged any facts to indicate that the Defendants were acting outside the scope of their duties. Plaintiffs have not shown that there is a specific waiver or exception for any of Plaintiffs' tort claims. In the absence of the state legislature recognizing this claim as actionable under the NMTCA, a plaintiff may not prosecute its tort claims against a governmental entity or public employee. Plaintiffs' tort claims will be dismissed.[9]

## VII.   Civil Conspiracy

Civil conspiracy is not in itself a cause of action; it must be accompanied by an independent civil action against one of the conspirators. *Ettenson v. Burke*, 130 N.M. 67, 72, 17 P.3d 440, 445 (2000). If there is no civil action, there is no civil conspiracy. In order to state a claim for civil conspiracy, Plaintiffs must allege "'(1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts.'" *Id.* (quoting *Silva v. Town of Springer*, 121 N.M. 428, 434, 912 P.2d 304, 310 (Ct. App. 1996)). To have a conspiracy, there must be an agreement or scheme. *See First Nat'l Bank of Dodge City, Kan. v. Perschbacher*, 335 F.2d 442, 444 (10th Cir. 1964). Even though the conspiracy may be inferred from the facts and circumstances and

---

[9]Although Defendants did not assert that the NMTCA applied to Plaintiff's defamation claim, because defamation is a state tort, the Court included it in the NMTCA analysis.

acts of the alleged conspirators, the burden is on the plaintiff to provide sufficient evidence to support the conspiracy claim. *State v. Deaton*, 74 N.M. 87, 90, 390 P.2d 966, 968 (1964); *see Morris v. Dodge Country, Inc.*, 85 N.M. 491, 492, 513 P.2d 1273, 1274 (Ct. App. 1973).

Plaintiff asserts that Defendants Hernandez, Martinez, Herbert, Terr, Sena and Ortiz were conspiring "to destroy his business, defame his name and possible criminal conviction." Doc. 7 ¶ 104, at 18. He asserts that Defendant Herbert "participated with Connie Martinez" in denying him due process. *Id.* ¶ 29, at 5. Plaintiffs' only remaining action at this time is Plaintiff's First Amendment-retaliation claim. To succeed on a civil-conspiracy claim, Plaintiff would need to show conspiracy in relation to that claim. However, at best, Plaintiff presents a series of events in which the defendants each participated at some point. Plaintiff presents no specific facts to show agreement and a concerted action by the Defendants. Plaintiff's civil-conspiracy claim will be dismissed.

## VIII.   Claims against Defendant Lewis Terr will be dismissed.

Defendants argue that the Court should dismiss the claims against Attorney Lewis Terr because Plaintiff has asserted no facts to indicate that Defendant Terr acted improperly. *See* Doc. 17 at 10. Plaintiff does not assert any specific violation of law by Defendant Terr or injury to him caused by Defendant Terr. He contends that Defendant Hernandez told him that Defendant Terr authorized her to deny his title. Doc. 7 ¶ 102, at 15. In his response, Plaintiff asserts "that the Defendant, Mr. Lewis Terr, was acting in the form of a complaining witness. Instead of a lawyer . . ." Doc. 23 lines 114-116 at 9-10. In the response, he also asserts that "Mr. Lewis Terr's actions were making a legal conclusion and was invading the province of the Court." *Id.*, lines 127-128 at 10. "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir.

2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "'Factual allegations must be enough to raise a right to relief above the speculative level.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Plaintiff's facts do not support any illegal action or injury by Defendant Terr. Plaintiff's claims against Defendant Terr will be dismissed.

Defendants also argue that because Defendant Terr was the "prosecutor" for the Motor Vehicle Division in the proceeding to cancel Plaintiff's dealer license he is entitled to absolute prosecutorial immunity.  *See* Doc. 17 at 10-11.  Because there are no proper allegations of legal wrongdoing against Defendant Terr or injury caused by him, the Court finds an analysis of Defendant's "absolute prosecutorial immunity" unnecessary.

## IX.     Title to Vehicles.

Plaintiff requests that the Court "issue bonded Packard title." Doc. 7 ¶ 97, at 14.  Defendants contend that the Court should dismiss the request because Plaintiff has provided no facts to show that denial of such title was improper or that the Court has jurisdiction to order the MVD to issue such title.  *See* Doc. 17 at 11.  Plaintiffs' request that the Court order title to the 1956 be issued is outside the province of the Court's jurisdiction.  The MVD is responsible for issuing titles and by statute it has great discretion and authority to deny or issue such title.  *See* N.M. STAT. ANN § 66-2-3 (1978).  The statute regarding a dealer's guarantee of title, N.M. STAT. ANN § 66-3-109 (1978), does not guarantee the issuance of title to a dealer.  The statute states that the MVD may require additional information from the dealer and "in its discretion" "may" issue a certificate of title.  The Court will grant the dismissal of Plaintiff's request for issuance of title.[10]

---

[10]Plaintiff's July 21, 2008 letter to Defendant Ortiz specifically requested an administrative hearing, but not for "refusal to title the 1956 Packard" as Plaintiff asserts in his Amended Complaint.  Doc. 7, ¶ 95 at 14.  The letter requests a hearing "concerning the refusal of [two] Motor Vehicles employees to perform their duties."  Doc. 7, Exhibit Y (Doc. 7-27).

X.      **Plaintiff Jeanie C. McKean.**

All of the claims are being dismissed except for Plaintiff's First-Amendment freedom-of-speech retaliation claim.  In order to bring a claim in federal court, a plaintiff must have a redressable injury caused by the defendant(s).  *See Ne. Fla. Chapter of Assoc'd. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663-64 (1993).  There are no remaining claims of injury by Plaintiff Jeanie C. McKean.

## CONCLUSION

Defendants have not demonstrated through their arguments in their motion to dismiss that Plaintiff's retaliation claim under the First Amendment should be dismissed.  However, with regard to the other claims, Plaintiffs have not demonstrated that Plaintiff was deprived his federal due-process rights when the state policy changed, that he had any constitutional right in his contractual relationship with the MVD or that he was deprived a property interest when contract was terminated.  Plaintiffs' state-tort claims are barred by the NMTCA.[11]

**IT IS THEREFORE ORDERED** that *Defendants Sally Hernandez, Cassandra Sena, Sam Herbert, Lewis Terr, and Ken Ortiz' Motion to Dismiss Plaintiff's Amended Civil Complaint* (Doc.

---

[11]In their Response to the motion to dismiss, Plaintiff assert that "they can prove a set of facts to support their claim which would entitle them to relief on a 2nd amended civil complaint." Doc. 23 at 2.  Leave may be denied because of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., or futility of the amendment. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).  "If the underlying facts or circumstances relied upon by the Plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962);   The United States Court of Appeals for the Tenth Circuit has explained that "'dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend.'" *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001)(quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999)).  As discussed herein, the additional information set forth in the 2nd Amended Complaint would not change the decision of the Court on the motion to dismiss.

17) is **DENIED** in part and **GRANTED** in part.  It is denied as to Plaintiff Richard D. McKean's First-Amendment retaliation claim, and granted as to all of Plaintiffs' other claims;

     **IT IS FURTHER ORDERED** that *Defendants Sally Hernandez, Cassandra Sena, Sam Herbert, Lewis Terr, and Ken Ortiz' Motion to Strike Plaintiff's Second Amended Civil Complaint* (Doc. 30) is **GRANTED**.

_____

**UNITED STATES DISTRICT JUDGE**